**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE FIRST CIRCUIT

---

**BAP NO. MB 18-053**

---

**Bankruptcy Case No. 17-12708-FJB**

---

**PAUL FRANCIS,**
**Debtor.**

---

**PAUL FRANCIS,**
**Appellant.**

---

**Appeal from the United States Bankruptcy Court**
**for the District of Massachusetts**
**(Hon. Frank J. Bailey, U.S. Bankruptcy Judge)**

---

**Before**
**Tester, Cabán, and Fagone,**
**U.S. Bankruptcy Appellate Panel Judges.**

---

**Carmenelisa Perez-Kudzma, Esq., on brief for Appellant.**

---

**September 10, 2019**

---

**Fagone, U.S. Bankruptcy Appellate Panel Judge.**

Paul Francis (the "Debtor") refused to comply with several orders issued by the bankruptcy court. On its own initiative, the court denied the Debtor a chapter 7 discharge. The Debtor has appealed the order denying his discharge (the "Order"), contending that the bankruptcy court should have dismissed the case and that the court lacked the authority to deny him a discharge sua sponte. We **AFFIRM**.

## BACKGROUND

In May 2017, the Debtor's chapter 13 case was dismissed due to his failure to file required documents. About two and a half months later, the Debtor filed another case, the one in which this appeal arises. This case began under chapter 13 but was later converted to chapter 11. The chapter 11 case was not successful. Due to the Debtor's accumulated omissions, including his failure to file a plan and disclosure statement, the bankruptcy court granted a motion by the United States trustee and issued an order converting the case to one under chapter 7. In so doing, the bankruptcy court considered whether dismissal or conversion would be in the best interests of the creditors and the estate. Based, in part, on the likely existence of equity for unsecured creditors in a chapter 7 case, the court decided that conversion was the right option. The Debtor appealed that decision and the Panel affirmed. See Francis v. Harrington (In re Francis), BAP No. MB 18-012, 2019 WL 1265316 (B.A.P. 1st Cir. Mar. 14, 2019).

The failures that contributed to the conversion of the case were not the Debtor's only failures to comply with the Bankruptcy Code and court orders.[1] When it converted the case, the

[1] Unless expressly stated otherwise, all references to "Bankruptcy Code," the "Code," or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq.

bankruptcy court also issued an order (the "Order to Update") requiring the Debtor to file: (1) an Official Form 108—a Statement of Intention for Individuals Filing Under Chapter 7 (the "Statement of Intention") "[w]ithin 30 days of the filing of [his] bankruptcy petition or the scheduled date of the § 341 Meeting of Creditors, whichever is earlier"; and (2) a schedule listing post-petition creditors by April 3, 2018 or a statement that he had none. The Order to Update warned:

> Failure to file the required documents with the Clerk's Office may result in the dismissal of your case. . . .
>
> Please note that if not dismissed earlier, the case **MUST** be automatically dismissed under 11 U.S.C. § 521(i) if certain documents are not filed within 45 days of the date of the filing of the petition. If you file another bankruptcy petition within 12 months of the dismissal, the automatic stay may be limited or may not take effect depending upon your circumstances.

The Debtor did not comply with the Order to Update. He also failed to appear at the § 341 meeting of creditors as scheduled.

In an apparent effort to secure the Debtor's compliance, the bankruptcy court entered another order (the "Second Order"), this time requiring the Debtor to file the missing documents by July 19, 2018. The Second Order also warned "that refusal to obey a lawful order of the court is grounds for denial of discharge in chapter 7" under § 727(a)(6)(A).

After the Debtor failed to comply with the Second Order, the bankruptcy court issued yet another order, this one on August 13, 2018 (the "Order to Show Cause"). The Order to Show Cause required the Debtor "to show cause in writing, with supporting affidavit(s), why he should not be denied a discharge for refusal to obey a lawful order of the court."

Shortly after the Order to Show Cause was issued, the Debtor's counsel filed a statement indicating: (1) the Debtor had not provided her with the list of post-petition creditors or

Statement of Intention; (2) she hoped to obtain the Debtor's court-ordered affidavit the following day; and (3) she would file all required documents on or about August 30, 2018.

The bankruptcy court then scheduled a hearing on the Order to Show Cause for September 18, 2018 and directed the Debtor to appear at the hearing. The court rescheduled the hearing for September 25, 2018 at the Debtor's request. On September 21, 2018—more than five months after the expiration of the deadline prescribed in the Order to Update—the Debtor finally filed a "Notice of No Post[-]Petition Creditors," representing he had no post-petition creditors. Additionally, on September 23, 2018, the Debtor filed a Statement of Intention, indicating that he intended to retain and redeem three properties.

Two days later, at the hearing on the Order to Show Cause, the Debtor's attorney explained that the Debtor had been confused about what was required of him in his bankruptcy case and that it was difficult for him to comply with court orders because his wife managed the family's financial matters. The bankruptcy court then examined the Debtor to ascertain whether he received court notices:

> THE COURT: Mr. Francis, we sent you a number of notices concerning things that you needed to do in connection with your case. We sent them to your counsel . . . but we also sent them to you, right? Did you get those notices?
> . . . .
>
> MR. FRANCIS: Yes.
>
> THE COURT: All right. You opened them up and you read them. Is that right?
>
> MR. FRANCIS: Well, yes. My wife did it. . . . I don't collect the mail. My wife collect[s] the mail. . . .
> . . . .
> THE COURT: . . . [I]n this current bankruptcy case we sent you notices . . . in March, July, and in August at least three times in connection with your list of

> post-petition creditors and your statement of intent. Is that how you understand it as well? You saw these notices and you opened them and read them, or they were opened and you read them after your wife did; is that right?
>
> MR. FRANCIS: Yes, my wife opened them but I don't know what time she get[s] them. I also want to tell you that my wife wasn't here. My wife was out of the country and then she came back. After she came back she suffered a second degree burn so that set back things when she opened things and then she wasn't here. . . .
>
> . . . .
>
> THE COURT: . . . [B]ut you were home, right? You were living there, is that right?
>
> MR. FRANCIS: Yes . . . .
>
> . . . .
>
> THE COURT: . . . [W]hen your wife was away out of the country and then she was ill or injured . . . you got the mail and opened it, right?
>
> MR. FRANCIS: No, I don't touch the mail.
>
> . . . .
>
> [M]y daughter collect[s] mail[ ] and put[s] them in a pile for her.

The Debtor's attorney then asked the Debtor whether he had "intentionally disobey[ed] a court order[.]" After responding in the negative, the Debtor assured her that he would "be more responsible with the mail."

The court then denied the Debtor his discharge from the bench, reasoning:

> [I]t's like pulling teeth with Mr. Francis and this has been going on since March 2017, not this March. And so we have repeatedly issued orders to show cause as to why . . . various things shouldn't happen and [his] case be dismissed, he loses his discharge because he hasn't done what he has been required to do and it shouldn't be that way. It can't be that way.
>
> This is the poster child for someone who has ignored what the court has required from him. . . . A big part of the problem in this case that caused its conversion was that we ordered him to file a plan and disclosure statement and that was ignored. Ignored. It was never filed. It was just a way to hold up the system.

That would be my conclusion with respect to the way he's chosen to handle this bankruptcy case.

So it is my intention to deny him his discharge in this Chapter 7 case because of repeated and willful failures to abide by orders of this Court. And under 11 U.S.C. [§] 727[(a)](6)(A) . . . the court may deny a discharge to a debtor where the debtor has refused in the case to obey any lawful order of the court other than an order to respond to a material question or to testify. So it has nothing to do with that; it has only to do with the day-to-day, week-to-week requirements of being in a Chapter 11 and then in a converted Chapter 7.

So at some point in time every judge sees a case where we say, enough is enough. . . .

The Order entered the same day provided:

Upon consideration of the order to show cause, the debtor being present and testifying at this hearing, and the undertakings of counsel, the Court finds that the Debtor repeatedly ignored lawful orders of the Court, and therefore denies the Debtor a discharge. Title 11 U.S.C. § 727(a)(6)(A) states that a court may deny a discharge if a debtor has refused "to obey any lawful order of the court . . . ." In this district, "some degree of volition or willfulness on the part of the debtor" is necessary to show a refusal. [Riley v. Tougas (In re Tougas)], 354 B.R. 572, 578 (Bankr. D. Mass. 2006). A debtor willfully refuses to obey a court order when he avoids court mailings. See [Katz v. Araujo (In re Araujo)], 292 B.R. 19, 24 (Bankr. D. Conn. 2003) (denying discharge after debtor failed to maintain a current mailing address with the court).

Here, the Debtor was ordered to submit statements of intent and of post-petition creditors on March 20, 2018, July 5, 2018, and August 13, 2018. The Debtor failed and refused to timely comply with each of these lawful orders of the Court. Finally, the debtor complied, but only on September 21 and 23, 2018, respectively, just before the hearing on September 2[5], 2018. His counsel stated in the response to the order to show cause that "Debtor has not provided Counsel with the statement of post-petition creditors or intent," placing the blame squarely on the debtor. I have to assume that the blame is properly placed.

At the present hearing, the Debtor testified that he intended to comply with all orders, but that he does not look at his mail. However, the Debtor cannot claim that these were innocent omissions in light of this Court's repeated warnings to Debtor and his counsel. This Debtor, after voluntarily filing a petition for relief, may not seek the benefits of bankruptcy while ignoring his duty to respond timely to lawful orders of the Court. As Araujo makes clear, avoidance of court mailings

> constitutes a willful refusal to comply. 292 B.R. at 24. The Court finds that the Debtor's conscious practice of ignoring mail, addressed to the Debtor and marked with the seal of this Court, warrants a denial of discharge under [§] 727(a)(6)(A). For the aforementioned reasons, the Debtor's discharge is hereby denied.

This appeal followed.

The Debtor argues that the bankruptcy court should have dismissed his case "automatically" under § 521 in accordance with the Order to Update's warning. The Debtor further contends that § 521 gives "bankruptcy courts almost no authority or discretion to avoid the automatic dismissal of cases." Finally, the Debtor challenges the sua sponte nature of the Order, asserting for the first time on appeal that only the trustee, a creditor, or the United States trustee may object to discharge under § 727(c)(1) and an adversary proceeding is required under such circumstances.

## JURISDICTION

The Panel may consider appeals from final orders. See 28 U.S.C. § 158(a)(1) and (c)(1); see also Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015). Because an order denying the debtor's discharge is a final order, see Church Joint Venture, L.P. v. Blasingame (In re Blasingame), 559 B.R. 692, 695 (B.A.P. 6th Cir. 2016); Gagne v. Fessenden (In re Gagne), 394 B.R. 219, 224 (B.A.P. 1st Cir. 2008), we have jurisdiction to hear this appeal.

## STANDARD OF REVIEW

"We review the bankruptcy court's legal conclusions de novo, its findings of fact for clear error, and its discretionary rulings for abuse of discretion." United Sur. & Indem. Co. v. López-Muñoz (In re López-Muñoz), 866 F.3d 487, 496-97 (1st Cir. 2017) (citation omitted). Here, however, we are not presented with any challenges by the Debtor to factual findings made

by the bankruptcy court. As a result, we evaluate the record by searching for errors of law or abuses of discretion.

## DISCUSSION

### I. The Relevant Standards

#### A. The Denial of Discharge under § 727(a)(6)(A)

Section 727(a)(6)(A) provides that:

> (a) [t]he court shall grant the debtor a discharge, unless—
> . . . .
> (6) the debtor has refused, in the case—
>
> (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify[.]

11 U.S.C. § 727(a)(6)(A). In search of a definition for the term "refuse," some bankruptcy courts have turned to Black's Law Dictionary:

> To deny, decline, reject. "Fail" is distinguishable from "refuse" in that "refuse" involves an act of the will, while "fail" may be an act of inevitable necessity.

In re Tougas, 354 B.R. at 578 (quoting Black's Law Dictionary 1153 (5th ed. 1979)); see also Gillman v. Green (In re Green), 335 B.R. 181, 183 (Bankr. D. Utah 2005). "The import of this definition is that § 727(a)(6)(A) requires a plaintiff to show more than a mere failure to obey a lawful court order. The plaintiff must show some degree of volition or wil[l]fulness on the part of the debtor in failing to comply with the order." In re Tougas, 354 B.R. at 578 (citation omitted); see also Smith v. Jordan (In re Jordan), 521 F.3d 430, 433 (4th Cir. 2008); Martinez v. Los Alamos Nat'l Bank (In re Martinez), 126 F. App'x 890, 896 (10th Cir. 2005). "The party objecting to discharge satisfies this burden by demonstrating that the debtor received the order in

question and failed to comply with its terms." In re Jordan, 521 F.3d at 433 (citations omitted); see also Missouri v. Allen (In re Foster), 335 B.R. 709, 716 (Bankr. W.D. Mo. 2006); LaBarge v. Ireland (In re Ireland), 325 B.R. 836, 838 (Bankr. E.D. Mo. 2005); In re Araujo, 292 B.R. at 24. Thus, the objecting party can establish that the debtor refused to obey a court's order for purposes of § 727(a)(6)(A) "if the court mailed the order to the address listed by [the] debtor on his petition." In re Ireland, 325 B.R. at 838 (citing In re Araujo, 292 B.R. at 24). The debtor is then required to explain his noncompliance. In re Jordan, 521 F.3d at 433; In re Foster, 335 B.R. at 716.

**B. Section 105(a)**

Section 105(a) empowers bankruptcy courts "to carry out the provisions of this title" and take any action necessary to "prevent an abuse of process." 11 U.S.C. § 105(a).[2] It further provides, in the second sentence: "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." Id. This sentence, "added in 1986, was expressly intended to broaden the authority of bankruptcy courts to act, sua sponte, to promote the Code's provisions." Kestell v. Kestell (In re Kestell), 99 F.3d 146, 148 (4th Cir. 1996) (citing 132 Cong. Rec. S15074-05 (Oct. 3, 1986) and Gibbons v. Haddad (In re Haddad), 68 B.R. 944, 949 (Bankr. D. Mass. 1987)). Based on its § 105(a) power and a record that amply demonstrated the debtor's

[2] Although the bankruptcy court did not explicitly invoke § 105(a) when it denied the Debtor a discharge, we may affirm on any basis apparent in the record. See Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237 n.11 (1st Cir. 2013) (citations omitted).

behavior constituted an "abuse of process" under that section, the Kestell court affirmed a bankruptcy court's sua sponte order denying a debtor's discharge under § 727(a)(2) for fraudulent concealment. See id. at 149, 151.

## II. The Standards Applied

The Debtor acknowledges that he received notice of the Order to Update, the Second Order, and the Order to Show Cause, and concedes that he failed to comply with those orders. He has not argued that he was unable to comply with the orders. The Debtor's only explanation was that he delegated responsibility for his mail—including bankruptcy court notices—to family members. The law does not permit a debtor to delegate responsibility in this manner and then be insulated from adverse consequences when court orders are not followed. The record supports the bankruptcy court's conclusion that the Debtor willfully and intentionally refused to obey court orders within the meaning of § 727(a)(6)(A). See In re Ireland, 325 B.R. at 838 (stating refusal under § 727(a)(6)(A) can be established if court mails notices to address listed on debtor's petition and debtor fails to comply); see also In re Tougas, 354 B.R. at 578 (finding "willfulness" under § 727(a)(6)(A) absent where illness and other circumstances mitigated debtor's failure to obey a lawful court order). Based on the foregoing, the bankruptcy court committed no error under § 727(a)(6)(A).

The Debtor gains no traction with his argument that the bankruptcy court was required to automatically dismiss his case in accordance with § 521(i). The Debtor's reliance on the Order to Update is misplaced because the First Circuit has already indicated that § 521(i) is more nuanced than the Debtor suggests. "The term 'automatic dismissal' is something of a misnomer.

Typically, dismissal under this provision takes place at the instance of a 'party in interest.' . . . Dismissal is, therefore, hardly 'automatic.'" Segarra-Miranda v. Acosta-Rivera (In re Acosta-Rivera), 557 F.3d 8, 10 (1st Cir. 2009) (citing 11 U.S.C. § 521(i)(2) and In re Spencer, 388 B.R. 418, 421 (Bankr. D.D.C. 2008)). In other words, the First Circuit has rejected a mechanical reading of § 521(i). See id. at 14.

The Debtor's assertion that the bankruptcy court lacked the authority to deny his discharge, sua sponte, comes too late and is waived as a result. See Abdallah v. Bain Capital LLC, 752 F.3d 114, 120 (1st Cir. 2014) (stating arguments raised for the first time on appeal are waived).[3] In any event, faced with a history of chronic failure by the Debtor to obey court orders, the bankruptcy court acted within its discretion under § 105(a) to enforce the provisions of the Bankruptcy Code and preserve the integrity of the bankruptcy process when it denied the Debtor's discharge under § 727(a)(6)(A), sua sponte. Cf. Kestell, 99 F.3d at 148; see also Farnsworth v. Morse (In re Farnsworth), BAP No. MW 08-086, 2009 WL 8466786, at *6 (B.A.P. 1st Cir. Nov. 20, 2009) (stating the Panel reviews decisions under § 105 for abuse of discretion).

We understand that the Debtor would have preferred for his case to be dismissed. See In re Francis, 2019 WL 1265316, at *2. But, the choice between conversion and dismissal was

[3] Not all courts agree that a court may deny a discharge sua sponte. See 2 Hon. Joan N. Feeney, et al., Bankruptcy Law Manual § 10.25 (5th ed. 2019) (stating "[w]hether the bankruptcy court may deny a discharge sua sponte is subject to question" and collecting cases); see also Cellco P'ship v. Bane (In re Bane), 426 B.R. 152, 160-61 (Bankr. W.D. Pa. 2010) (acknowledging that "authority exists for the proposition that a bankruptcy court may *sua sponte* deny a debtor's Chapter 7 discharge" as well as for the opposite proposition) (citations omitted). Because of the Debtor's waiver, however, we need not resolve the question here.

already made by the bankruptcy court in another context. See id. at *7. Moreover, the Debtor's argument that the bankruptcy court denied him due process when it withheld his discharge instead of simply dismissing his case overlooks the warnings issued by the bankruptcy court in the Second Order and the Order to Show Cause, both alerting the Debtor that his discharge was at risk.

## CONCLUSION

On this record, we cannot conclude that the bankruptcy court misapprehended the law or committed an abuse of discretion. We, therefore, **AFFIRM** the Order.